# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

**CASE NO. 21-CIV-23501-MORENO/GOODMAN**

DORETHA WORLEY

      Plaintiff,

v.

CARNIVAL CORPORATION

      Defendant.

_____/

**REPORT AND RECOMMENDATIONS[1] ON DEFENDANT'S MOTION
TO STRIKE AND/OR PRECLUDE PLAINTIFF'S TREATING PHYSICIANS FROM
GIVING EXPERT OPINIONS BASED ON INSUFFICIENT EXPERT DISCLOSURES**

This Report and Recommendations concerns a cruise ship passenger plaintiff who failed to adequately comply with expert witness disclosure requirements for non-retained treating doctors. Plaintiff, Doretha Worley, did not supplement the required disclosures even after the defendant cruise ship operator alerted her counsel to the omission and unsuccessfully requested supplemental, compliant disclosures.

---

[1]      The Undersigned is issuing this ruling as a Report and Recommendations, rather than as an Order, because the recommendation, if adopted, would prevent Plaintiff's treating doctors from providing expert opinion testimony on certain issues -- and this result could have case-dispositive implications.

Given this procedural scenario, the Undersigned respectfully recommends that the District Court **grant in part** Defendant Carnival Corporation's motion. Specifically, the recommendation is that the three treating physicians be permitted to testify as fact, lay witnesses about their treatment but be precluded from offering the expert opinions which were not adequately disclosed.

## I.    Factual and Procedural Background

Worley's Complaint [ECF No. 1] alleges the following scenario:

She was a fare-paying passenger aboard Carnival's "*Sensation*" and, on July 27, 2019, while in her stateroom bathroom, she held onto the bathroom sink to steady herself due to the vessel's motion. As she held on to the sink, it detached without warning from the bathroom wall, causing her to fall and sustain injuries.

In her deposition, however, Worley testified that she was sitting on the toilet in the cabin bathroom and grabbed the bathroom sink to pull herself up from the toilet and then subsequently fell when the sink detached from the wall. Worley also explained that she always pulls herself up from the toilet with the sink, both on this cruise and other cruises. She said her practice is to grab on to the sink when she is getting up from a cruise ship cabin toilet because she is old and uses the sink for support. [ECF Nos. 28; 28-1].

On August 19, 2022, Plaintiff served her Expert Witness Disclosure where she disclosed the following treating physicians as "'hybrid' treating physicians who may offer opinion testimony arising out of their treatment of the Plaintiff": David M. Lang, D.O.; Bismark Amoah Apraku, M.D.; and William T. Felmly, M.D.

The disclosure for Dr. Lang explained that he is board certified in emergency medicine and "is expected to testify about the treatment set forth in the Plaintiff's medical records." **No further detail was provided.**

Worley's disclosure for Dr. Apraku was significantly longer, but the substantive tenor was to simply list broad topics, not tethered to the actual medical facts surrounding Plaintiff's past and future treatment:

> Dr. Amoah Apraku is Plaintiff's treating primary care physician. Dr. Amoah Apraku is expected to testify as to the mechanics of Plaintiff's lumbar injury; causation, and treatment Plaintiff underwent in connection with her lumbar injury. Dr. Amoah Apraku is also expected to testify as to the course of her subsequent medical care and the long term/permanent effects of the injury. Dr. Amoah Apraku's testimony will reference all of Plaintiff's medical records which have been provided to the [sic] Defendant. The doctor is also expected to testify to the reasonableness and necessity of his services and the charges for same and **whether** they are representative of charges for similar services in the medical community; **whether** the subject accident was a cause of the injury, condition, symptom for which he treated the plaintiff and **whether** the plaintiff will need future healthcare and palliative treatments or continuing treatment, procedures, medicines and services and the reasonable cost for those prospective services all within reasonable medical probability and they are all causally related to the subject accident. The doctor is also expected to testify as to the effects the injuries from the accident will have upon the [sic] plaintiff in her later years. To the extent that demonstrative aids will be used to show the jury the [sic] plaintiff's injuries, surgeries, treatments and anatomical and physiological condition at various times during the course of treatment, the doctor is expected to testify that such demonstrative aids are a reasonable representation of what they purport to depict.

(emphasis added).

Plaintiff's disclosure for Dr. Felmly is, other than a change in the name of the physician and the specialty (orthopedic surgery, rather than primary care), **identical** to the one for Dr. Apraku.

In an August 25, 2022 email to Plaintiff's counsel, Carnival's counsel stated: "we do not believe Plaintiff's expert disclosure is compliant with Rule 26 with regard to treating physicians and we respectfully request a compliant disclosure." Plaintiff's counsel responded in an August 30, 2022 email:

> We've discussed this over the phone and in other cases but the doctors are all treating doctors who can testify to the observations made during the course of their treatment. They have not been retained for litigation, we have no control over them **nor do** *we* **have the ability to compel** *them* **to provide any** *report* **beyond the records they keep in the ordinary course of treatment.** You are free to contact their offices to depose them and we will work with their schedule to make the depositions happen. (emphasis added).

[ECF No. 38-6].

None of the three treating doctors provided expert reports pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) and neither those doctors nor Plaintiff's counsel provided summaries of the physicians' opinions pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

[Judicial Observation: Rule 26(a)(2)(B) requires a written report **signed by the retained expert** expected to offer opinion testimony. But Rule 26(a)(2)(C) does not require the non-retained *witness* (e.g., the three doctors in this case) to provide or sign a written report or make a disclosure. Instead, the subsection which contains the required disclosure for non-retained experts refers back to subsection (A), which concerns a disclosure made by the *party*. Thus, it is typical for the *attorney* who expects to call the non-retained fact witness for trial testimony to provide the disclosure required by subsection (C) -- the subject matter of the witness' expected testimony and "a summary of the facts and opinions to which the

witness is expected to testify." Indeed, it was Plaintiff's counsel who made the disclosures (which Carnival says are inadequate) under subsection (C) here.].[2]

Carnival has another complaint about Dr. Felmly: it was unable to take his deposition before the September 30, 2022 discovery deadline expired. As noted earlier, on August 30, 2022, Plaintiff's counsel advised that he could not produce Dr. Felmly for deposition because he had not retained the doctor as an expert and had no control over him. Basically, Carnival had to serve the doctor with a deposition subpoena on its own, without any cooperation from Plaintiff. Carnival made several attempts, but on September 9, 2022 and September 21, 2022, Prisma Health Orthopedics advised that Dr. Felmly was on medical leave and his return date was undetermined.

Carnival never took Dr. Felmly's deposition.

---

[2]     Given this procedural reality, Plaintiff's counsel's written comment that he can't compel a non-retained treating doctor to provide an expert witness report or summary is a non sequitur. The relevant subsection does not require the disclosure to come from the non-retained expert. It *can* come from the non-retained expert, of course, as there is nothing to prevent that. But it is not *required*. And, in practice, the summary required by subsection (C) almost always, at least in this District, comes from the attorney.

Despite the text of the Rule, some courts have sometimes used imprecise or unsuitable language to incorrectly suggest that it is the non-retained expert who is supposed to sign or prepare the summary called for by subsection (C). *See, e.g., Kelly v. Carnival Corp.*, No. 20-CV-23856, 2022 WL 953141, at *4 (S.D. Fla. March 30, 2022) ("[I]f the physician's testimony is expected to include opinions beyond mere facts observed as part of a patient's treatment, such as opinions regarding the cause of injuries, the **physician,** who was not retained for the purpose of presenting expert testimony, **must provide disclosures** sufficient to satisfy **Rule 26(a)(2)(C)**." (emphasis added)).

Carnival also has other issues about Dr. Lang. It notes that Plaintiff never disclosed him in her initial disclosures or interrogatory answers. In addition, Plaintiff did not produce Dr. Lang's medical records until August 30, 2022, after the expiration of Carnival's deadline to disclose its own retained experts. Carnival says that Plaintiff was aware of Dr. Lang's involvement in Worley's medical care by at least July 17, 2022.[3]

Carnival filed a separate motion in its effort to preclude Dr. Lang from providing expert opinion testimony. Specifically, it filed a "*Daubert* Motion as to Dr. David Lang" [ECF No. 44], which raises many of the same arguments it asserts in the instant motion. Carnival explained that it filed this second motion "in an abundance of caution" in the event that Plaintiff attempts to have him proffer a causation opinion, "as any such opinions are also unreliable and therefore inadmissible." [ECF No. 44, p. 2]. The Undersigned will address the arguments raised in that separate motion in a separate, later ruling.

The Parties' Contentions

Carnival contends that Plaintiff failed to comply with Federal Rule of Civil Procedure 26 concerning the non-retained treating doctors and her intent to have them provide opinion testimony beyond the pure facts of their actual treatment. According to Carnival, the so-called disclosures do not meet the requirements of either Rule 26(a)(2)(B)

---

[3]       The cover page for the production of medical records to Plaintiff's counsel says that the project was completed on July 13, 2022, which implicitly indicates that Plaintiff made the request for records *before* July 13, 2022. [ECF No. 38-4].

or Rule 26(a)(2)(C). Carnival says the disclosures are either woefully inadequate (as for Dr. Lang) or inherently vague and unhelpful (for Drs. Apraku and Felmly).

It argues that Plaintiff's failure to produce Dr. Lang's medical records until after August 30, 2022 generated significant prejudice because it deprived Carnival's experts of the opportunity to review and opine on them. And it says that the records ultimately produced demonstrate that Plaintiff's counsel was aware of those records and requested copies before July 13, 2022, suggesting that Plaintiff's counsel was trying to sandbag the defense.

Carnival also focuses on the fact that Plaintiff's expert disclosure about Dr. Lang does not even reference that he would be providing opinions about causation.

Carnival describes the disclosure of the opinions of Drs. Apraku and Felmly as "nearly identical, broad, and generic recitations of all possible opinions doctors may render in a lawsuit, without any meaningful or distinguishing information beyond the specialty of the individual treating physician."

Carnival contends that the medical records ultimately produced for these treating physicians do not indicate that they issued any expert opinions about causation, prognosis and/or future implications of the injury. In a related point, Carnival argues that the medical records to not indicate that knowing the details of Worley's alleged fall on the *Sensation* was a critical part of the doctors' diagnosis or evaluation of her claimed injuries or for determining a course of treatment.

Carnival emphasizes that it tried to cure the prejudice by asking Plaintiff's counsel to supplement her disclosures but she failed to honor the request.

Carnival's stated preference is for the Court to prevent the doctors from testifying at all. However, as an alternate argument, it says that their testimony, if permitted, "should be limited to facts pertaining to their treatment of Plaintiff, and that they be precluded from providing opinions concerning causation of Plaintiff's claimed injuries, disability, alleged impairments or permanency, prognosis, the reasonableness of past incurred medical costs, the necessity for, and cost of future medical care, or any other 'expert' opinions." [ECF No. 38, p. 9].

Not surprisingly, Plaintiff opposes the motion and says that she *did* timely disclose all three of her treating doctors in her August 19, 2022 expert disclosure, which was a month before the lay and expert discovery deadline expired. She also points out that Drs. Apraku and Felmly were listed by their names and work addresses in her June 30, 2022 Initial Disclosures.

She argues that Carnival had ample time to take the depositions of any or all of the three doctors and could have (but did not) ask for an enlargement of the discovery deadline for Dr. Felmly, given his medical-based unavailability to give a deposition. Moreover, she notes that Carnival took Dr. Lang's deposition on October 13, 2022, after the discovery deadline expired. Therefore, she argues there is no reason why she could not have asked for a similar enlargement to take Dr. Felmly's deposition.

Concerning Dr. Lang, Plaintiff says it is not surprising that she did not recall his name or facility affiliation with the University of Miami Hospital, given that he was treating her in an emergency room (and not as her regular primary care doctor), she lived outside of Florida and received treatment in Miami only on an emergency basis shortly after her onboard fall and that she was "unfamiliar with the nuances of the Miami-Dade County hospital system." Besides, Plaintiff says, Carnival has now taken Dr. Lang's deposition, which, according to her view, means that "there was no prejudice to Carnival" arising from the mere fact that the Initial Disclosures did not identify him by name.

Plaintiff argues that the opinions which Carnival is seeking to exclude (the cause of her injuries; the permanency of her injury; her prognosis; the reasonableness of past medical costs; and the need for, and estimated costs of, future care) "encompass the totality of the physicians' care and treatment" of Plaintiff. She also contends that the doctors' opinions about these matters are "clearly derived from their observations while treating [her]," and "informed by their knowledge and experience in their respective medical specialties." [ECF No. 43, p. 3]. Therefore, she says, a formal expert report pursuant to Rule 26(a)(2)(B) is not required -- and her disclosure of the anticipated doctor testimony on these topics is "adequate."

Plaintiff suggests that Rule 26(a)(2)(C) expressly allows the non-retained expert treating physician's anticipated testimony on these issues to be disclosed by way of a summary "presumably due to the limited control a party has over a treating physician or

other nonretained [sic] witness, as opposed to a retained witness hired for the express

purpose of giving testimony." [ECF No. 43, p. 4].

Concerning Dr. Lang, Plaintiff argues that the disclosure -- which says only that he

is expected to testify "about the treatment set forth in the Plaintiff's medical records" -- is

adequate. After all, Plaintiff argues, the disclosure makes clear "that he will be testifying as

the treating emergency room physician who provided medical care to [Worley] on an

emergent [sic] basis and that he will be describing his treatment based on his observations

during the course of treatment and his 'knowledge, training and experience' as an

emergency room physician." [ECF No. 43, p. 4].

And, Plaintiff further argues, Dr. Lang has already given a deposition, so (according

to Worley) "Carnival knows or should know the scope of his testimony and relevant

opinions." [ECF No. 43, p. 5].

Plaintiff also says that the disclosures concerning Drs. Apraku and Felmly are

adequate under Rule 26(a)(2)(C) because: (1) they are disclosed as physicians with personal

knowledge of Worley's condition and treatment; (2) they will testify as to the "mechanics"

of her lumbar injury, need for future medical care, and the costs, reasonableness and

necessity of the care they themselves provided; and (3) they will testify about "whether the

subject accident was a cause of the injury."

Thus, Plaintiff says, "none of the topics or content" of their testimony will be a

surprise to Carnival because Carnival has all of Plaintiff's relevant medical records from

which the doctors will testify and because their anticipated opinions "are explained in the

disclosure and in any event are within the scope of routine and expected treating physician testimony." [ECF No. 43, p. 5].

Worley also says there is ample record evidence that her onboard fall caused the compression fracture diagnosed shortly thereafter and that any "opinions" about medical causation by the treating doctors "have been and would be based on this objective and nearly contemporaneous imaging evidence, to which Dr. Lang has already testified [to] in his deposition." *Id.* at 6.

Furthermore, she continues, there is no record evidence of her experiencing a fall or experiencing another traumatic event between her fall in her stateroom bathroom and the imaging done in Miami a few days later. Thus, Plaintiff says, the observations Dr. Lang made and the imaging studies he reviewed "supports the obvious and expected finding that the fall was the proximate medical cause of [her] L1 fracture." *Id.*

In conclusion, Plaintiff argues, the doctors' opinions about causation, prognosis and cost of care will be based on their own observations and the nearly contemporaneous imaging studies reviewed by them and therefore "will fall well within the scope of routinely admitted hybrid treating physician testimony."

As expected, Carnival takes issue with all of Plaintiff's responsive arguments.

Carnival says that Plaintiff's stated reasons for not recalling Dr. Lang's name or his affiliation with the University of Miami Hospital -- which supposedly caused the untimely disclosure of him and the hospital -- are "patently false, absurd and irrelevant." [ECF No. 45, p. 2]. Carnival notes that, as of July 20, 2019, Plaintiff had a physical copy of her imaging

studies conducted at the University of Miami Hospital. And it points out that "Plaintiff's counsel obviously would not and could not have requested records from [the] University of Miami Hospital unless Plaintiff had first notified them of her treatment at said facility in advance." [ECF No. 45, p. 2, n.2].

Framed by this factual background, Carnival says "there is not substantial justification for Plaintiff's untimely disclosure of her treatment with, and medical records from, Dr. Lang and the University of Miami Hospital." *Id.* at 2-3.

Carnival also argues that the deposition it took of Dr. Lang does not eliminate the prejudice caused by the untimely disclosure because Carnival's expert was unable to review and opine on those records before the expert witness disclosure deadline.

As argued by Carnival, Plaintiff's counsel knows that expert testimony is required to proffer opinions on causation of injuries and that compliant disclosure is necessary for all experts (including treating doctors) who will provide opinion testimony on prognosis, impairments, permanency, reasonableness of medical costs and the need/cost of future medical care.

Concerning the format of the disclosure, Carnival notes that a Rule 26(a)(2)(C) disclosure would still be needed even if the Court assumes for the sake of discussion that a subsection (B) report is not required.

Carnival contends that the disclosure concerning Dr. Lang is too generic to provide it with sufficient notice of the opinions he will provide at trial. Because the vague and cryptic

summary does not mention that Dr. Lang will proffer a causation opinion, Carnival argues, he should be prevented from offering that opinion.

Confronted with the reality that it took Dr. Lang's deposition and Plaintiff's argument that it now already knows the scope of his opinions, Carnival argues that Plaintiff and her counsel should not benefit from violating the disclosure requirements. Carnival points to case law authority holding that the purpose of the disclosure requirements is so that opposing counsel is not forced to take an expert's deposition in order to avoid ambush at trial. Similarly, it relies on authority that merely having to take a deposition on information which should have been disclosed in a Rule 26 report is in and of itself a form of prejudice.

[Judicial Observation: Dr. Lang did not expressly state in his deposition that Worley's fall on the ship **caused** her back injuries. Instead, Plaintiff's counsel asked him [ECF No. 35-10, pp. 21-22] if "this L1 compression fracture [was] consistent with the fall on the ship that was reported by Ms. Worley?" Carnival's counsel objected, noting that it called for an improper expert opinion, and Dr. Lang testified that "[m]y assumption is that [the] patient presented with acute back pain and had an acute fracture noted on CT with a history of trauma, so we treated it as an acute injury." No one asked any follow-up questions, so there is no specific deposition testimony in which Dr. Lang opined that the purported fall caused the alleged injury. Therefore, contrary to Plaintiff's argument, Carnival did not learn about Dr. Lang's opinion on causation from his deposition and consequently did not specifically know his opinion on this -- or if he even has an opinion on this in the first place.].

Moving on to Dr. Felmy, Carnival argues that Plaintiff's counsel tried to have defense counsel "completely shoulder the burden of locating Dr. Felmy and therefore [this] should be considered improper gamesmanship." [ECF No. 45, pp. 7-8].

Carnival also argues that having the full medical records from Dr. Felmy and Dr. Apraku are wholly inadequate under Rule 26(a)(2)(C) because providing medical records in lieu of a summary is insufficient. As a follow-up to that point, Carnival then notes that the written disclosures (which are verbatim) are inadequate because they actually disclose nothing of substance.

According to Carnival, to say (as Plaintiff has done) that the opinions of these two doctors are within the scope of routine and expected treating physician testimony, without explaining specifically *what* the opinions are and the facts supporting them, is to force Carnival to guess about the opinions and the grounds for them.

At bottom, Carnival's theory is that Plaintiff is seeking to ambush it at trial with previously undisclosed expert opinions from treating doctors whose opinions, at a minimum, should have at least been disclosed under Rule 26(a)(2)(C).

## II.   <u>Applicable Legal Standards and Analysis</u>

<u>Rule 26 Expert Witness Disclosure Requirements</u>

Federal Rule of Civil Procedure 26(a)(2) requires a party to disclose the identity of any expert witness it may call upon at trial. Pursuant to Rule 26(a)(2)(B), if a witness is retained or specifically employed to provide expert testimony in a case, then the disclosure must be

accompanied by a written report prepared and signed by the witness that sets forth the witness's opinions and the bases for those opinions. Fed. R. Civ. P. 26(a)(2)(B).

If a party fails to provide information or identify an expert witness as required by Rule 26(a), then the party is not allowed to use that information or witness to supply evidence at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1); *Jones v. Royal Caribbean Cruises, Ltd*., No. 12-20322-CIV, 2013 WL 8695361, *3 (S.D. Fla. Apr. 4, 2013) (Torres, J.).

When a witness is not specifically retained or employed to provide expert opinions and testimony but is, nevertheless, expected to provide expert opinions as part of his or her testimony, then Rule 26(a)(2)(C) requires the party offering such testimony to disclose the identity of the witness, the subject matter on which the witness is expected to present evidence, and a **summary of the facts and opinions** to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(A)-(C).

The summary disclosure required under Rule 26(a)(2)(C) is considerably less extensive than the report required by Rule 26(a)(2)(B), which makes it easier for non-retained experts to testify without preparing a comprehensive written report. *See In re Concept Boats, Inc.*, No. 19-CV-20526, 2020 WL 3162983, at *3 (S.D. Fla. May 28, 2020) (McAliley, J.). Nevertheless, compliance with Rule 26(a)(2)(C) still requires disclosure of the subject matter on which the witness will present evidence, as well as a summary of the witness's opinions and the bases for those opinions. *See Jones,* 2013 WL 8695361, at *4. A reader of the disclosure

must have an idea of the opinion the witness will offer and of the facts on which the witness will base that opinion. *Id.* at *4.

Physicians are listed as one example of the types of witnesses typically subject to Rule 26(a)(2)(C) in the Advisory Committee Notes to the 2010 amendments. *See* Fed. R. Civ. P. 26, advisory committee's note to 2010 amendment. Although treating physicians are not generally required to provide disclosures in compliance with Rule 26, if the physician's testimony is expected to include opinions beyond mere facts observed as part of a patient's treatment, such as opinions regarding the cause of injuries, then there must be disclosures about the opinions of the physician, who was not retained for the purpose of presenting expert testimony. Those disclosures must be sufficient to satisfy Rule 26(a)(2)(C). *See Ortega-Guzman v. Sam's East, Inc.*, No. 16-81977-CIV, 2018 WL 11343940, at *2 (S.D. Fla. Aug. 30, 2018) (Zloch, J.).

Therefore, a treating physician may testify as a lay witness regarding observations made during treatment of an injured person, and, if the testimony is so limited, the treating physician need not satisfy the expert disclosure requirements of Rule 26. *See Underwood v. NCL (Bahamas) Ltd.*, No. 17-24492-CV, 2019 WL 1559659, at *3 (S.D. Fla. Apr. 10, 2019) (Torres, J.) (noting that treating physicians are not required to provide a Rule 26(a)(2)(B) report if opinions are based on observations made during treatment).

However, "when a treating physician goes beyond the observations and opinions obtained by treating the individual and expresses opinions acquired or developed in anticipation of trial, then the treating physician steps into the shoes of an expert who may

16

need to provide a Rule 26(a)(2)(B) report." *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006).

When a treating physician's testimony exceeds the scope of treatment, the simple disclosure of the name of a treating physician does not comply with Rule 26(a)(2)(B) or (C). *See Jones*, No. 12-20322-CIV, 2013 WL 8695361 at *4.

Nor does the provision of medical records alone satisfy the "summary of the facts and opinions" prong of Rule 26(a)(2)(C). *Id*.

And, as Chief Magistrate Judge Torres explained in *Jones*, *supra*, "[a]llowing medical records to be submitted in lieu of a summary would invite a party to dump voluminous medical records on the opposing party, contrary to the rule's attempt to extract a 'summary.'" *Id*. (internal quotations omitted).

<u>Rule 37 and the Consequences of Failing to Comply with Rule 26(a)(2)</u>

When a party fails to properly disclose an expert witness or expert opinions as required by Rule 26(a)(2), the party may not use the expert or opinion "unless the failure was substantially justified or is harmless." *See* Fed. R. Civ. P. 37(c)(1). Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. *In re Denture Cream Prod. Liab. Litig.*, No. 09-2051-MD, 2012 WL 5199597, at *4 (S.D. Fla. Oct. 22, 2012) (Altonaga, J.), on reconsideration in part, No. 09-2051-MD, 2012 WL 13008163 (S.D. Fla. Nov. 14, 2012). Failing to comply with Rule 26 is "harmless" when "there is no prejudice to the opposing party." *Id*. (internal quotations omitted).

When assessing whether there was substantial justification for the failure to disclose or whether the failure to disclose was harmless, courts consider four factors: (1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *Jones*, 2013 WL 8695361 at*4.

In *Jones*, Chief Magistrate Judge Torres considered a defendant's request to exclude treating physicians from presenting expert opinions under circumstances similar to those here and held that the plaintiff's failure to comply with Rule 26 by not providing expert disclosures for the testifying physicians was not substantially justified. *Id*. Judge Torres also explained that, because the discovery cutoff was closed and trial was on the horizon, the Court was constrained in its ability to cure the harm caused by the plaintiff's noncompliant disclosures. *Id*. at *5.

Judge Torres ruled that for treating physicians whose depositions were not taken before the discovery cutoff, the plaintiff's "failure to provide expert reports, Rule 26 disclosures, or other discovery . . . result[ed] in unfair prejudice to the [d]efendant, at least to the extent that [the plaintiff] intended to elicit expert testimony from these doctors." *Id*. at *6. The treating physicians in *Jones* were therefore excluded from testifying at trial as expert witnesses but, as **treating** physicians, could still testify as lay witnesses to the general course of plaintiff's medical treatment. *Id.*

18

Witness-Specific Rulings

Because Plaintiff wants Dr. Lang to provide opinion testimony on the cause of her injuries (and to link them to her fall aboard the *Sensation),* she was, at a minimum, required to provide a disclosure under Rule 26(a)(2)(C). The Undersigned easily rejects Plaintiff's argument that the one-sentence disclosure is adequate. It is not. It provides the reader with no substantive information about Dr. Lang's opinion. Indeed, it is not even clear to the Undersigned that Dr. Lang actually has an opinion on causation, as it does not appear in the medical records and the one question which arguably touches upon the issue in his deposition yielded an answer which does not even mention the words "cause" or "causation."

Nevertheless, to the extent that Plaintiff seeks to elicit this opinion at trial (and the Undersigned assumes she does, as the parties have spent considerable time, money and energy briefing the issue), she may not do so. The disclosure is woefully inadequate.

Because the medical records do not discuss Dr. Lang's opinions and because a party cannot circumvent the Rule 26 expert witness disclosure requirement by providing only medical records, Plaintiff cannot successfully rely on the argument that the records are a sufficient disclosure.

The Undersigned also deems it significant that Carnival specifically flagged the deficient Rule 26 disclosure to Plaintiff's counsel in an email but Plaintiff's counsel did not provide any amendments or supplements. This is a significant distinction from cases in which the party seeking to exclude expert opinion testimony withheld its objection and did not

timely seek to obtain the disclosures or more information about purportedly inadequate disclosures. *Cf. Torres v. Wal-Mart Stores East, L.P.*, 555 F. Supp. 3d 1276, 1300 (S.D. Fla. 2021) (noting that the defendant "sat on its hands and *never* moved for an order compelling a more detailed disclosure" and concluding that this failure to resolve the summary's deficiencies much earlier caused the defendant's "claimed prejudice" to "ring[] hollow now"); *Schleife v. Royal Caribbean Cruises, Ltd.*, No. 19-22776, 2021 WL 1723673, *5 (S.D. Fla. April 30, 2021) (denying motion to exclude two doctors' expert testimony about causation and prognosis where "the defendant . . . withheld its objection until it filed a motion seeking to exclude the expert testimony").

So the sole disclosure about Dr. Lang was that he "is expected to testify about the treatment set forth in Plaintiff's medical records." This does not even remotely approach being a sufficient disclosure. *Small v. Amgen, Inc.*, No. 212CV476FTMPAMMRM, 2017 WL 5443912, at *4 (M.D. Fla. Feb. 15, 2017) ("[T]he Court finds that [the] [p]laintiffs' purported summaries and vague references to medical records do not come close to satisfying the disclosure requirement imposed by Fed. R. Civ. P. 26(a)(2)(C)(ii)."); *Heard v. Town of Camp Hill*, No. 316CV00856WKWGMB, 2017 WL 3622781, at *3 (M.D. Ala. Aug. 23, 2017) (finding the plaintiff's disclosures inadequate because the plaintiff "[had] done little more than sketch out the broad contours of the subjects about which his experts [would] testify" and therefore "ha[d] [not] linked those opinions to the facts on which they [were] based, as required by Rule 26(a)(2)(C)").

Given the Rule 26 violation for Dr. Lang's purported opinions, the Undersigned must assess whether this was substantially justified and whether it prejudiced Carnival.

Plaintiff failed to establish that her failure to provide a compliant summary under Rule 26(a)(2)(C) was substantially justified. The Undersigned understands that Plaintiff herself may have been unfamiliar with the name of her doctor and hospital because she does not reside in South Florida -- but her *counsel* surely knew that information by mid-July 2022 or earlier, when they requested Worley's medical records from the University of Miami Hospital.

Moreover, although the Undersigned acknowledges the practical reality that Dr. Lang is not a retained expert and may not be willing to provide his own report or his own disclosure, Plaintiff's counsel are seasoned personal injury lawyers based in South Florida and have been involved in prior cases where the need for expert testimony and disclosure requirements for treating doctors have been discussed by judges in written orders. *See, e.g.,* *Vitiello v. Carnival Corp.,* No. 14-20441-CIV (S.D. Fla. Sept. 22, 2014) [ECF No. 69] (granting Carnival's motion to strike and holding that the doctor may testify as a treating physician "but . . . may not give expert opinions that were not previously disclosed in a timely exchanged expert report"); *Katzoff v. NCL (Bahamas) Ltd.*, No. 19-CV-22754-MGC, 2021 WL 4973455, at *2 (S.D. Fla. Aug. 12, 2021) (granting partial summary judgment to Defendant cruise ship operator after noting that expert testimony was required to establish a causal connection between the accident and the injury).

Plaintiff's counsel should have taken steps to obtain the information necessary to produce an adequate summary so that Dr. Lang's opinion (if he even has one) on causation could be used at trial.

Worley also did not demonstrate that the failure to provide an adequate disclosure of Dr. Lang's opinions was harmless. Carnival was unable to obtain advice and counsel from its own experts in time to retain an expert on causation before the expiration of the expert witness deadline. To be sure, Carnival did ultimately take Dr. Lang's deposition, but his testimony did not establish that he had an opinion on causation, and, if he did, what it is. *Cayago Americas, Inc. v. Heinen*, No. 21-CV-61035, 2022 WL 2806530, at *4 (S.D. Fla. Apr. 28, 2022) (citing *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998)) ("Failure to disclose in a timely manner is equivalent to failure to disclose.").

Because there was an inadequate disclosure concerning Dr. Lang's purported expert opinion on causation, he may not testify about any opinions or information other than about his treatment of Worley and his observations of her condition. In other words, he may testify as a lay witness, providing fact witness testimony about what happened during her stay at the University of Miami Hospital, observations about her condition and treatment, and Worley's course of treatment.

The Undersigned now shifts to Drs. Apraku and Felmly.

As an initial matter, the Undersigned is not faulting Plaintiff or her counsel for Carnival's inability to take Dr. Felmly's deposition, which is, in effect, a separate ground from the non-compliant disclosure grounds. Because he is not a retained witness, it is unlikely that

Plaintiff's counsel can exert any control over this doctor. In fact, Plaintiff's counsel sent an email to Carnival's counsel, explaining that they do not have control and therefore cannot facilitate the doctor's voluntary appearance at a deposition. Carnival has not submitted any evidence to even arguably rebut that pronouncement.

Moreover, it is not *Plaintiff's* fault that the doctor had to take medical leave and was not at the hospital when Carnival attempted to serve him with a deposition subpoena.

So the Undersigned will not in any way weigh in Carnival's favor any issues surrounding Carnival's inability to take the doctor's deposition. I do not consider Plaintiff's counsel's notice of their lack of control over the non-retained doctors to be "improper gamesmanship."

Nevertheless, Plaintiff's disclosures about both of these doctors are inadequate. Although the length of the purported disclosures are significantly longer than the one-sentence summary provided for Dr. Lang, the disclosures do not actually disclose *anything* of substance. To the contrary, they are merely a personal injury lawsuit version of "throwing in the kitchen sink."

For all practical purposes, the identical disclosures merely list the *topics* of possible opinions which doctors might render without actually disclosing the *actual* opinion or tethering them to the specific facts of the case. *Carideo v. Whet Travel, Inc.*, No. 16-23658-CIV, 2018 WL 1367444, at *12–13 (S.D. Fla. Mar. 16, 2018) (finding noncompliance with Rule 26(a)(2)(C) for treating physician where disclosure was a "laundry list of every conceivable topic on which a doctor might opine on in any type of case" and not a summary of a specific

treating doctor's opinion). *Cf. Kondragunta v. Ace Doran Hauling & Rigging Co.*, No. 1:11-cv-01094-JEC, 2013 WL 1189493, at *6 (N.D. Ga. Mar. 21, 2013) (finding a Rule 26(a)(2)(C) disclosure inadequate where "the reader of plaintiff's disclosure [would have] no idea what opinion the doctor will offer or on what facts the doctor will base that opinion").

Any reasoned analysis of the disclosures reveal that they do not disclose any actual opinions. Instead, they simply mention *topics* and, at times, mention that the doctor will testify about **whether** a certain medical topic is present -- which is a far cry from summarizing an actual opinion and providing the factual grounds to support it. Indeed, the disclosures here are so generic that they could be used in *any* lawsuit involving physical injuries.

The disclosures "are not sufficient to inform a decision about whether to take a deposition" of the doctors. Saying that these doctors will have some type of opinion "without revealing the actual opinion" is "tantamount to saying nothing at all." *Kroll v. Carnival Corp.*, No. 19-23017, 2020 WL 4926423 (S.D. Fla. Aug. 20, 2020). In fact, given the vagueness of the disclosure, it could well be that Drs. Apraku and Felmly have *no* opinions on the topics listed -- or even have opinions which contradict or undermine Plaintiff's position (e.g., maybe their actual opinions are that the fall did not cause her back injuries, that there is no need for future medical care and that the incurred medical costs were unreasonable). The point is, neither Carnival nor anyone else reading the disclosure would know *anything* about the opinions. They would have to make a pure guess.

In addition, Plaintiff has not pointed to any specific entry in the medical records which reveal that any of the treating physicians formed an opinion based on their observations made during their treatment of Worley.

Similarly, Plaintiff has not pointed to medical records reflecting that knowing the details of Plaintiff's fall was a critical part of diagnosing or evaluating Worley's injuries or determining a course of treatment.[4] Therefore, it is certainly possible that these doctors had to produce the more-detailed report required by Rule 26(a)(2)(B). *See, e.g., Elardi v. Royal Caribbean Cruises, LTD*, 340 F.R.D. 607, 611 (S.D. Fla. 2022). My ruling, however, is based on Plaintiff's failure to comply with the more-relaxed, less-comprehensive summary required by Rule 26(a)(2)(C). Had I required compliance with Rule 26(a)(2)(B), the evaluation would have been a far-simpler one, as Plaintiff's counsel conceded, as they must, that no Rule 26(a)(2)(B) report was provided or signed.

Plaintiff has not demonstrated substantial justification for these failures. In fact, Plaintiff has not even attempted to establish substantial justification or that the violation was harmless -- as she argues that the disclosures *were* compliant. But, as outlined above, the Undersigned disagrees. None of the disclosures for any of the three treating physicians were compliant with the Rule 26 expert witness disclosure obligations.

---

[4]     In his deposition, Dr. Lang agreed that for purposes of treating and diagnosing Plaintiff, "it would not matter whether she fell in the bathroom of a cruise ship or the bathroom of her home." [ECF No. 35-1, p. 11: 5-9].

The Rule 26 violations were not harmless. Carnival would be confronted with new opinions, constituting unfair surprise. The Undersigned understands that Carnival acknowledges that it has taken Dr. Apraku's deposition, but it has represented [ECF No. 45, p. 9 n.10] that he did not actually testify about his **opinions** there, and Plaintiff has not suggested that he did.[5]

Moreover, the purpose of these disclosure requirements is so that "opposing counsel is not forced to depose an expert in order to avoid ambush at trial[.]" *Dyett v. N. Broward Hosp. Dist.*, No. 03-60804-CIV, 2004 WL 5320630, at *1 (S.D. Fla. Jan. 21, 2004); *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) ("Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational."); *Hamlett v. Carroll Fulmer Logistics Corp.*, 176 F. Supp. 3d 1360, 1365 n.7 (S.D. Ga. 2016) (citing *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010)); *St. v. Drury Inns, Inc.*, No. CIV.A.08-0700-CG-N, 2009 WL 3784330, at *2 (S.D. Ala. Nov. 10, 2009) ("The court recognizes that 'merely having to depose a party on information that should have been disclosed in a Rule 26 Report is a form of prejudice.'").

---

[5]     The parties have not submitted Dr. Apraku's deposition transcript, in whole or in part, so the Undersigned will accept at face value Carnival's representation about what he said (or did not say) in his deposition, given Plaintiff's failure to dispute or challenge the representation.

These requirements "provide opposing parties 'reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" *Reese*, 527 F.3d at 1265.

Similar to the ruling for Dr. Lang, Plaintiff will not be permitted to elicit opinion testimony from Drs. Apraku and Felmly. Because striking a witness is a drastic remedy, the recommendation here is that they be permitted to testify as lay witnesses about their treatment and their observations about Plaintiff's condition and her course of treatment.

In other words, previously-undisclosed opinions about causation, disability, permanency of injuries, prognosis, the reasonableness of past medical costs and the need/cost of future medical care are off limits at trial.

Therefore, the Undersigned **respectfully recommends** that Carnival's motion be **granted in part**. The three doctors may testify as lay witnesses about the facts surrounding their treatment of Worley, but they may not offer opinion testimony not previously disclosed in a Rule 26 summary. *See Elardi*, 340 F.R.D. at 610 (explaining that "in the Eleventh Circuit, treating physicians who are not designated as experts may offer 'lay' testimony that implicates their specialized experience as a physician if the testimony is an account of their observations during the course of treatment or if it is offered for the purpose of explaining the physician's decision-making process or the treatment provided" (citing *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) (citing *Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999)) and *Weese v. Schukman*, 98 F.3d 542, 550 (10th Cir. 1996))).

**OBJECTIONS**

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with Senior United States District Judge Federico A. Moreno. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 36(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, on January 27, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All Counsel of Record