UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 21-CIV-23501-MORENO/GOODMAN

DORETHA WORLEY

    Plaintiff,

v.

CARNIVAL CORPORATION

    Defendant.
_____/

**REPORT AND RECOMMENDATIONS[1] ON
DEFENDANT'S *DAUBERT* MOTION AS TO DR. DAVID LANG**

This Report and Recommendations concerns a cruise ship operator (Carnival Corporation) which wants to exclude under the *Daubert*[2] rule opinion testimony from an emergency room doctor in Miami who treated a passenger plaintiff (Dorthea Worley) who says she was injured when she grabbed onto a stateroom bathroom sink while getting up from the toilet and fell when it pulled out from the wall.

---

[1]     The Undersigned is issuing this ruling as a Report and Recommendations, rather than as an Order, because the recommendation, if adopted, would prevent one of Plaintiff's treating doctors from providing expert opinion testimony on causation -- and this result could have case-dispositive implications.

[2]     *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 582 (1993).

For reasons outlined below, the Undersigned respectfully recommends that the District Court **grant** Carnival's motion.

I. <u>**Factual and Procedural Background**</u>

Worley's Complaint [ECF No. 1] alleges the following scenario:

She was a fare-paying passenger aboard Carnival's "*Sensation*" and, on July 27, 2019, while in her stateroom bathroom, she held onto the bathroom sink to steady herself due to the vessel's motion. As she held on to the sink, it detached without warning from the bathroom wall, causing her to fall and sustain injuries.

In her deposition, however, Worley testified that she was sitting on the toilet in the cabin bathroom and grabbed the bathroom sink to pull herself up from the toilet and then subsequently fell when the sink detached from the wall. Worley also explained that she always pulls herself up from the toilet with the sink, both on this cruise and other cruises. She said her practice is to grab on to the sink when she is getting up from a cruise ship cabin toilet because she is old and uses the sink for support. [ECF Nos. 28; 28-1].

On August 19, 2022, Plaintiff served her Expert Witness Disclosure, where she disclosed Dr. David Lang, an emergency room doctor at the University of Miami Hospital, as a "'hybrid' treating physician who may offer opinion testimony arising out of his treatment of the Plaintiff. The disclosure for Dr. Lang explained that he is board certified in emergency medicine and "is expected to testify about the treatment set forth in the Plaintiff's medical records." No further detail was provided. Carnival later advised

2

Plaintiff's counsel that this disclosure was inadequate, but Plaintiff never provided any further disclosures about Dr. Lang's opinions.

Carnival filed a separate and earlier motion [ECF No. 38] concerning Dr. Lang. In that motion, Carnival is seeking to preclude Dr. Lang and two other doctors from providing expert opinions because of insufficient expert disclosures. After the filing of an opposition response and reply, the Undersigned issued a Report and Recommendations [ECF No. 48], recommending that the motion be granted in part. Relevant here, the Report and Recommendations takes the position that Dr. Lang should not be permitted to provide expert opinion testimony at trial on the issue of whether the alleged fall in Plaintiff's stateroom bathroom caused her claimed back injuries. The time for Objections has not yet expired.

Carnival says it filed the instant motion in an abundance of caution. In the event that the Report and Recommendations described above is not adopted, Carnival wants to prevent Plaintiff from eliciting purported causation opinions from Dr. Lang. Plaintiff provided a non-response response [ECF No. 46], in which she advised that Carnival raised "nothing new" (which was not in the memorandum filed in connection with the earlier motion) and therefore announced that she was standing on her earlier opposition response. Carnival filed a reply [ECF No. 47]. Senior United States District Judge Federico A. Moreno referred all pretrial matters to the Undersigned. [ECF No. 41].

Before addressing the merits of the instant motion, the Undersigned will first confront Plaintiff's argument that Carnival's current motion raises nothing new.

The Undersigned disagrees.

The earlier motion focused on insufficient expert witness disclosures under Federal Rule of Civil Procedure 26 for non-retained hybrid witnesses. It did not concern the primary grounds which Carnival raised here: *Daubert*, Federal Rule of Evidence 702 and Federal Rule of Evidence 403.

These arguments are different from the ones previously briefed. Because Worley did not substantively respond in any way to the current arguments, she waived or abandoned all of her potential contrary arguments. *Katzoff v. NCL Bahamas, Ltd.*, No. 19-22754-CIV, 2021 WL 1525517, at *9 (S.D. Fla. Apr. 19, 2021), report and recommendation adopted sub nom. *Katzoff v. NCL (Bahamas) Ltd.*, No. 1922754-CIV-COOKE/GOODMAN, 2021 WL 2953182 (S.D. Fla. July 14, 2021) (finding plaintiff's arguments about expert opinions to be abandoned and deeming those opinions inadmissible);[3] *Carter v. BPCL Mgmt., LLC*, No. 19-60887-CIV, 2021 WL 7502562, at *1 (S.D. Fla. Sept. 22, 2021) ("Plaintiff's refusal to refute any arguments in Defendant's [*Daubert*] Motion operates as a waiver of those arguments and is akin to a failure to respond."); *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[W]hen a party fails to respond to an

---

[3] The lawyers for Katzoff also represent Plaintiff Worley here, so they are familiar with the consequences of abandoning legal arguments by not addressing them.

argument or otherwise address a claim, the Court deems such argument or claim abandoned." (citing *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001))); *Brown v. Buddy Bee Corporation*, No. 14-24368-CIV-ALTONAGA, 2015 WL 11233388, at *4 (S.D. Fla. Mar. 11, 2015) (failure to address arguments is tantamount to failing to respond, finding party waived substantive argument against motion to strike (citing *Glass v. Lahood*, 786 F. Supp. 2d 189, 210 (D.D.C. 2011) (noting that where plaintiff's opposition addresses only certain arguments, those arguments that are not addressed are deemed conceded))).

Worley's abandonment of any substantive arguments focused on *Daubert* and Federal Rules of Evidence 403 and 702 should end the analysis.

However, it is prudent to evaluate the merits of Carnival's arguments anyway, in an abundance of caution.

But there is a threshold issue to address first: whether Dr. Lang even *has* an opinion on causation to be excluded. The record is thin, but it strongly suggests that Dr. Lang may **not** have a causation opinion.

First, as noted, Worley's expert witness disclosure about Dr. Lang says nothing about causation. The topic was, however, briefly raised in his deposition.

Second, Dr. Lang did not testify during his deposition that Plaintiff's claimed injuries (L1 fracture and back pain) were causally related to the subject incident. However, Dr. Lang did testify, in response to a question about whether the back injury

5

was "consistent" with her fall, that it was his "assumption" that Plaintiff presented on July 20, 2019 with acute back pain and that she had an acute fracture. [ECF No. 35-10, pp. 8:2-6; 21:25-22:11].

That brief exchange is the only record evidence about Dr. Lang's purported opinion on causation. He was never expressly asked whether the fall caused the injury. He was never specifically asked his opinion on causation. And his medical records do not reflect that he has an opinion on whether the fall caused Worley's injuries, so it is far from clear why, and from where, Plaintiff's counsel apparently believes that he has such an opinion. Nevertheless, Plaintiff is, in fact, advancing that position.

### Applicable Legal Standards and Analysis

"The district court's role [in policing the admissibility of expert opinion testimony] is especially significant since [an] expert's opinion 'can be both powerful and quite misleading because of the difficulty in evaluating it.'" *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 594–95).

"[D]etermining the admissibility of expert testimony under Rule 702 [involves] a rigorous three-part inquiry." *Id.* A court must assess whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the jury through the application of scientific, technical, or specialized expertise, to understand the evidence or

6

to determine a fact in issue. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert,* 509 U.S. at 589).

The Eleventh Circuit calls these "qualification, reliability, and helpfulness" requirements. *Frazier,* 387 F.3d at 1260.

The party offering the expert testimony (i.e., Worley) carries the burden of laying the proper foundation, and admissibility must be shown by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

Carnival is not challenging Dr. Lang's qualifications, so there is no need to discuss it here.

When implementing Rule 702, *Daubert* requires district courts to ensure that any and all scientific testimony or evidence admitted is both relevant and reliable. *Id.* 509 U.S. at 589–90.

The Eleventh Circuit has applied this standard to physicians offering causation testimony. *Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 712 (11th Cir. 2008); *Morrow v. Brenntag Mid-S., Inc.,* 505 F. Supp. 3d 1287, 1289 (M.D. Fla. 2020).

"Expert evidence based on a fictitious set of facts is just as unreliable as evidence based on no research at all." *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996). Moreover, for an expert's opinion to be permissible, "[t]he expert must be in possession of the necessary facts which will allow the expert to form an accurate conclusion." *D & D Assoc., Inc. v. Bd. of Educ. of N. Plainfield,* 411 F. Supp. 2d 483, 488

7

(D.N.J. 2006); *see also Guidroz-Brault v. Mo. Pac. R. Co.*, 254 F.3d 825, 830-31 (9th Cir. 2001) (noting that it is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record); *Greenwell v. Boatright*, 184 F.3d 492, 497 (6th Cir. 1999) (expert opinions are "inadmissible when the facts upon which the expert bases his testimony contradict the [record] evidence").

Expert testimony is also not admissible when its factual bases are not adequately explained. *Cook v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1111 (11th Cir. 2005).

Dr. Lang's so-called causation opinion is inadmissible under *Daubert* and Fed. R. Evid. 702 because it is speculative and therefore unreliable.

Medical opinions regarding causation must be stated to a reasonable degree of medical certainty. *See Aponte v. Royal Caribbean Cruises, Ltd.*, No. 15-21854-CIV, 2019 WL 943267, at *3 (S.D. Fla. Feb. 26, 2019) ("[R]egarding causation, '[a]n expert witness must be able to state an opinion, based on a reasonable degree of medical certainty, that the defendant's negligence is more likely than anything else to have been the cause of [the] plaintiff's injuries.'"); *Tonelli v. NCL (Bahamas) Ltd.*, 428 F. Supp. 3d 1313, 1322 (S.D. Fla. 2019) (noting that "medical opinions must be based on hard facts or established scientific methodology that eliminates other reasonable inferences" and "[r]easonable medical probability is the functional equivalent of preponderance of the evidence" (citations and internal quotation marks omitted)); *Drury v. Cardiac Pacemakers, Inc.*, No. 8:02CV933T-17MAP, 2003 WL 23319650, at *3 (M.D. Fla. June 3, 2003) ("An expert witness must be

8

able to state an opinion, based on a reasonable degree of medical certainty, that the defendant's negligence is more likely that [sic] anything else to have been the cause of plaintiff's injuries."); *Owens by Owens v. Bourns, Inc.*, 766 F.2d 145, 149–50 (4th Cir. 1985) (Medical opinion evidence must express a "reasonable degree of medical certainty" that it was more likely that the defendant's negligence was the cause than any other cause for that evidence to be sufficient to go to the jury).

As explained above, Dr. Lang did not testify during his deposition that Plaintiff's claimed L1 fracture (or back pain) was causally related to the subject incident. Rather, Dr. Lang merely testified that it was his **"assumption"** that Plaintiff presented with acute back pain and had an acute fracture. An assumption is not a medical opinion based on a reasonable degree of medical certainty, so it is not an opinion. Instead, it is unreliable speculation and must be excluded.

In addition, expert opinions must be based on adequate facts or data in order to be admissible. Fed. R. Evid. 702(b). Indeed, the Eleventh Circuit has held it is proper to exclude expert testimony when the factual basis is not adequately explained. *Cook ex rel. Estate of Tessier*, 402 F.3d at 1111; s*ee also Holland v. Walter Kidde Portable Equip.*, No. 2:05-cv-325, 2008 WL 6759950, at *2 (N.D. Ala. Mar. 24, 2008) (noting that where an expert's opinions are based on insufficient facts or data, they are scientifically unreliable).

Here, Dr. Lang, who only treated Plaintiff once, three days after the subject incident, did not review any of Plaintiff's medical records pre-dating the subject incident

9

before (perhaps) formulating a purported causation opinion. In addition, he did not know that Plaintiff had prior complaints of back pain, previously wore a back brace and had at least two falls before she fell in the stateroom bathroom aboard the *Sensation*.

Because Dr. Lang failed to review Plaintiff's prior medical history before formulating his purported causation opinion, Dr. Lang clearly did not perform a differential diagnosis to rule out any alternative causes of Plaintiff's alleged injuries. *See Williams v. Mosaic Fertilizer*, LLC, 889 F.3d 1239, 1245 (11th Cir. 2018) (finding one of the most significant problems with an expert's report being the "failure to meaningfully rule out other potential causes of [the plaintiff's] medical conditions*"); Hendrix ex rel. GP v. Evenflo Co., Inc.*, 609 F.3d 1183, 1197 (11th Cir. 2010) (holding that "a mere temporal relationship between an event and a patient's disease or symptoms does not allow an expert to place that event on a list of possible causes of the disease or symptoms"); *Guinn v. AstraZeneca Pharms. LP*, 602 F.3d 1245, 1253 (11th Cir. 2010) (a differential diagnosis, properly conducted, constitutes a reliable methodology for determining medical causation under *Daubert*); *Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 714 (11th Cir. 2008) ("Although a medical expert need not rule out every possible alternative in order to form an opinion on causation, expert opinion testimony is properly excluded as unreliable if the doctor engaged in very few standard diagnostic techniques by which doctors normally rule out alternative causes and the doctor offered no good explanation as to why his or her conclusion remained reliable." (citation and internal quotation marks

omitted)); *In re Trasylol Prod. Liab. Litig.*, No. 08-CV-80419, 2010 WL 8354662, at *9 (S.D. Fla. Nov. 23, 2010) ("A differential diagnosis requires 'determining the possible causes for the patient's symptoms and then eliminating each of the potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely.'"); *Haggerty v. Upjohn Co.*, 950 F. Supp. 1160 (S.D. Fla. 1996) (finding deficiencies with an expert's methodology for failing to eliminate possible causes before arriving at specific causation opinion).

Not only did Dr. Lang not discuss a differential diagnosis, but he did not testify that he even *considered* any alternative causes to Plaintiff's claimed injuries. Of course, Dr. Lang cannot be faulted for that omission, as he was not asked at his deposition any questions specifically targeting causation and the medical records do not reflect that assessment either.

Given this history (or lack of history), the Undersigned concludes that any purported causation opinion is not based on sufficient facts and was not derived with a reliable methodology. *See Poltorak v. Ferrell*, No. 16-81832-CIV, 2018 WL 1718688, at *7 (S.D. Fla. Jan. 4, 2018) (finding doctor's opinion about causation to be unreliable and inadmissible); *Morrow,* 505 F. Supp. 3d at 1291–93 (expert was precluded from proffering causation opinion for failing to review the plaintiff's prior medical records and not sufficiently addressing alternative causes to the plaintiff's claimed injuries).

The Undersigned also finds that Dr. Lang's alleged causation opinion would be unhelpful to the jury.

Rule 702(a) requires expert testimony to "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). This means that "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (citing 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[02], pp. 702–18 (1988); *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985) ("An additional consideration under Rule 702—and [an] aspect of relevancy—is whether expert testimony proffered . . . is sufficiently tied to the facts of the case [to] aid the jury in resolving a factual dispute.")). This consideration is referred to as "fit." *Downing*, 753 F.2d at 1226.

Helpfulness "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591–92.

Dr. Lang's purported causation opinion is unhelpful and irrelevant because he did not opine to a reasonable degree of medical certainty that the subject incident caused Plaintiff's claimed injuries. *Wheat v. Sofamor, S.N.C.*, 46 F. Supp. 2d 1351, 1358 (N.D. Ga. 1999) (expert medical testimony excluded as unhelpful and irrelevant because expert could not state to a reasonable degree of medical certainty that pedicle screws that were the subject of the lawsuit caused the plaintiff's pain); *see also Cameron v. Peach Cnty., GA*,

No. 5:02-CV-41-1CAR, 2004 WL 5520003, at *9 (M.D. Ga. June 28, 2004) (holding that the speculation of an expert will not be helpful to a jury).

For similar reasons, Dr. Lang's purported causation opinion should be excluded under Federal R. Evid. 403.

Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible expert opinion testimony is substantially outweighed by its potential to confuse or mislead the jury. *See United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985). *Daubert* emphasizes that Rule 403 is important to "expert testimony admissibility analysis [because] expert testimony could be 'both powerful and quite misleading because of the difficulty in evaluating it.'" *Allison*, 184 F.3d at 1310 (citing *Daubert*, 509 U.S. at 595).

"The judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *United States v. Masferrer*, 367 F. Supp. 2d 1365, 1374 (S.D. Fla. 2005).

Dr. Lang's purported causation opinion would only serve to mislead the jury as he did not opine within a reasonable degree of medical certainty that Plaintiff's claimed injuries were causally related to the subject incident, which is a disputed issue in this case.

For the reasons outlined above, the Undersigned respectfully recommends that Judge Moreno **grant** the motion and preclude Dr. Lang from offering expert opinion testimony (assuming he even has an opinion, which has not yet been established) that the alleged fall caused Plaintiff's claimed injuries.

**OBJECTIONS**

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Federico A. Moreno. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 36(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, on January 30, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All Counsel of Record