**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 21-CIV-23501-MORENO/GOODMAN**

DORETHA WORLEY

      Plaintiff,

v.

CARNIVAL CORPORATION

      Defendant.

_____/

**REPORT AND RECOMMENDATIONS ON DEFENDANT CARNIVAL'S**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

This Report and Recommendations concerns a plaintiff (Doretha Worley) who was a passenger on the cruise ship *"Sensation"* and who filed a personal injury lawsuit against its operator (Defendant Carnival Corporation) for injuries she says she sustained in her stateroom bathroom. Carnival filed a motion for summary judgment, arguing (primarily) that it did not have actual or constructive notice of the dangerous condition -- a stateroom bathroom sink which was unlocked and/or inadequately secured to the wall. This condition allegedly caused Worley to fall when she grabbed the sink and it detached.

The ruling issued here hinges largely on one prior, similar incident on a sister ship in the same class of vessel. Because the one prior incident creates a genuine issue of material

fact as to whether Carnival had constructive notice of the purportedly dangerous condition, the Undersigned respectfully recommends that the District Court **deny** the motion.

Phrased differently, a reasonable jury could find that, based on the prior fall involving a stateroom bathroom sink, Carnival could foresee the risk. This result, if adopted by Senior United States District Judge Federico Moreno, does not mean that Worley has *prevailed* on this issue. It merely means that she has cleared (albeit barely) the summary judgment hurdle. At trial, of course, a reasonable jury could also determine that (1) the prior incident is not similar enough for constructive notice purposes and/or (2) one incident is insufficient to generate grounds for the constructive notice doctrine.

## PROCEDURAL BACKGROUND

Worley's Complaint [ECF No. 1] alleges the following scenario:

While in her stateroom on July 27, 2019, she held onto the bathroom sink to steady herself due to the vessel's motion. As she held on to the sink, it detached without warning from the bathroom wall, causing her to fall and sustain injuries.

In her deposition, however, Worley testified that she was sitting on the toilet in the cabin bathroom and grabbed the bathroom sink to pull herself up from the toilet and then subsequently fell when the sink detached from the wall. Worley also explained that she always pulls herself up from the toilet with the sink, both on this cruise and other cruises. She said her practice is to grab on to the sink when she is getting up from a cruise ship cabin toilet because she is old and uses the sink for support. [ECF Nos. 28; 28-1].

Worley filed a four-count Complaint against Carnival [ECF No. 1]. Count I is for negligent maintenance (direct liability); Count II is for negligent failure to warn (direct liability); Count III is for negligent maintenance (vicarious liability); and Count IV is for negligent failure to warn (vicarious liability). Carnival moved [ECF No. 6] to dismiss the entire Complaint. Judge Moreno dismissed with prejudice Counts III and IV, but he denied the motion as to Counts I and II [ECF No. 16]. Judge Moreno held that notice is still required for premises liability cases. He directed the parties to complete limited discovery targeted at whether Carnival plausibly had actual or constructive notice of the alleged dangerous condition and to file an amended complaint.

Worley filed her Amended Complaint [ECF No. 19], asserting the two counts permitted by Judge Moreno's Order (i.e., negligent maintenance and negligent failure to warn). The Amended Complaint contained additional allegations about notice. Carnival filed an Answer (with affirmative defenses). [ECF No. 20].

Carnival filed a summary judgment motion [ECF No. 29] and Judge Moreno referred all pretrial proceedings to the Undersigned [ECF No. 41]. Plaintiff filed a response to the summary judgment motion and Carnival filed a reply [ECF Nos. 33; 40]. Carnival filed [ECF No. 28] its Statement of Material Facts in support of its motion, and Worley filed [ECF No. 35] her response to Carnival's factual statement. Worley did not file her own "additional facts," as permitted by Local Rule 56.1(b)(2)(D). She did, however, as noted above, add some purportedly additional facts to her response to Carnival's factual statement.

3

## UNDISPUTED FACTUAL BACKGROUND

### Introductory Note About Undisputed Facts

The facts are generated, in part, from the paragraphs in the statement of facts or response to the statement of facts which the respective opposing party expressly agreed are undisputed. For those purported facts which the opposing party classified as partly disputed, the Undersigned includes only the undisputed portions. The Undersigned will retain the paragraph numbering used by Carnival in its motion. The abbreviation "N/A," means that the paragraph is substantively and substantially disputed and cannot be reworded in a way to accurately reflect an actual undisputed fact.

The Undersigned sometimes changed the wording of an undisputed fact for stylistic and/or grammatical purposes. In addition, to enhance readability, I removed the specific record citations. They can be found in the source document, if needed.

If Plaintiff argued that a fact was disputed but did not provide record evidence to support the contention, then I deemed the fact to be undisputed if otherwise supported by record evidence.

At times, Plaintiff challenged a fact as disputed but analysis demonstrates that the undisputed fact is not actually disputed. Instead, Plaintiff was at times merely offering an additional, but not contradictory, point.

To provide a factually-simple analogy, assume that a plaintiff in a garden-variety car collision personal injury case submits an affidavit (in support of a summary judgment motion) that the traffic light at issue was red for the defendant driver. Assume that the

4

defendant submits a response, arguing that the fact is "disputed," and files a supporting affidavit saying (only) that it was storming and the visibility was poor. The weather and visibility might be additional facts leading to another point or argument, but they do not prevent the fact about the traffic light being red from being treated as undisputed.

This analogy applies even if Plaintiff (the party opposing Carnival's summary judgment motion) offered several additional facts to support the notion that the undisputed fact is actually disputed. Thus, if the hypothetical affidavit mentioned above also explained that it was storming, the visibility was poor, the radio was on loud, it was dusk, the driver was changing stations on the car radio, the windshield wipers were inoperable and the plaintiff was speeding, none of these additional facts would cause the undisputed fact that the light was red for the defendant driver to somehow be deemed a disputed fact.

To provide a more-comprehensive and more-balanced factual background, the Undersigned sometimes combined an undisputed fact from a response and added it into the initial numbered paragraph.

If Plaintiff took the position that a purported undisputed fact is disputed but cited only to inappropriate source material, then the Undersigned would treat the undisputed fact as undisputed. For example, if Plaintiff relied solely on the unverified allegations of a pleading as supposed grounds to support the argument that a factual dispute exists, then that reliance is not well founded and was ignored, as it is mere rhetoric, inadequate to generate a viable evidentiary reason to conclude that a factual dispute exists.

If Plaintiff, in responding to a purportedly undisputed fact, injected a new fact (as opposed to actually opposing the undisputed fact or filing her own additional undisputed facts, as the Local Rule requires),[1] then I would sometimes include the additional fact to provide context and a more-comprehensive factual narrative.

## (Additional) Background

Before providing its statement of undisputed material facts, Carnival first included a section it describes as "Background." Worley does not expressly respond to this section, but her own supposed responses contain additional argument which, for all practical purposes, is akin to a response to Carnival's Background section. Because the "Background" section

---

[1]   Local Rule 56.1(b)(2)(D) requires a party opposing a summary judgment motion and who wants to add new facts to include a separate "Additional Facts" section after responding to the Movant's undisputed facts. The additional facts are supposed to start with a numbered paragraph immediately following the last numbered paragraph in Movant's Statement of Undisputed Facts. The Movant (Carnival, here) then has the opportunity to indicate, in a Reply Statement of Facts, whether it thinks any of the additional undisputed facts are actually disputed, and, if so, to include a record cite for that evidence.

When a party opposing a summary judgment motion does not follow this procedure but, instead, simply drops in the new, purportedly-undisputed fact into her paragraph-by-paragraph response to the undisputed facts supporting a Movant's summary judgment motion, then the process is short-circuited and the Court has difficulty discerning whether a specific additional fact is disputed, and, if so, what record evidence supports the argument that the fact is disputed.

As I will outline later in this Report, Plaintiff routinely used this impermissible approach (e.g., contend that a fact submitted by Carnival was "disputed" and then refer immediately -- in the same numbered paragraph -- to myriad additional and purportedly undisputed facts, thereby preventing Carnival from filing a procedurally appropriate response to explain whether and why the additional fact is disputed). Carnival pointed out its disagreements with those additional facts in its Reply. [ECF No. 39].

and Worley's supplemental comments outline the parties' contentions, the Undersigned includes them in this Report. Carnival's contentions are listed here (with stylistic changes and edits) and Plaintiff's contentions appear in some of her responses in the Undisputed Facts section.

Carnival moves for summary judgment in its favor on both of Plaintiff's counts. It says there is no record evidence that Carnival had notice that the cabin bathroom sink was in an allegedly dangerous condition. Plaintiff's Amended Complaint alleges that she held onto the subject stateroom bathroom sink to steady herself due to "motion of the vessel," but this unsworn allegation is contradicted by her deposition testimony. Plaintiff testified that, at the time of her alleged incident, while sitting on the toilet in her cabin bathroom, she grabbed the cabin bathroom sink to pull herself up from the toilet and then subsequently fell when the sink became detached from the wall.

Worley also testified that she had previously used the subject cabin bathroom sink for support after having used the toilet before her alleged incident on the subject cruise. Additionally, Plaintiff has a history of using stateroom bathroom sinks for support each time she goes on a cruise. Therefore, Carnival also moves for summary judgment on all of Plaintiff's claims under the additional theory that: (1) Plaintiff knowingly misused the cabin bathroom sink as a support device; (2) the misuse was not the intended purpose of the sink or a foreseeable use of it; and (3) the product misuse was the proximate cause of her alleged damages.

Finally, Carnival contends there is no record evidence to establish medical causation of Plaintiff's claimed injuries, thereby entitling it to summary judgment on all claims on this ground as well.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiff was aboard the Carnival *Sensation* as a fare-paying passenger on July 17, 2019.

2. Plaintiff testified that at the time of her alleged incident on July 17, 2019, while she was sitting on her cabin toilet, she grabbed the cabin bathroom sink as a support device to help her stand up after using the toilet because of her advanced age.

3. Plaintiff testified that she had previously used the subject cabin sink for support after having used the toilet before her alleged incident on the subject cruise.

4. Plaintiff has a history of using stateroom bathroom sinks for support each time she goes on a cruise.

5. N/A [Plaintiff points out that the bathroom sink attaches to the wall through a locking mechanism. She further notes that the sink can become detached from the wall only when it is unlocked, as it is impossible to detach the sink from the wall by simply grabbing it without unlocking the compartment with a key. She also explains that Carnival's security officer and floor supervisor investigated and confirmed that the sink's compartment had somehow become unlocked and therefore not attached to the wall. The lock had not been damaged; it had merely been left in an unlocked position. Carnival's accident summary report says that "the cabinet compartment was not properly secured to the wall" and

8

"Plumber immediately came and secured the said cabinet." Similarly, Carnival's corporate representative testified that the security officer advised that "the sink detached from the wall because it wasn't locked."].

[Carnival's housekeeping staff inspects and cleans the sinks on a daily basis. If the sink compartment is not properly attached, then the housekeeping staff is expected to identify the condition during daily inspections and to contact Plumbing Department employees to relock the sink compartment.].

[Another passenger fell using an almost-identical sink when the compartment was not properly locked. This incident occurred on a sister class ship approximately six months before Worley's incident.].[2]

6. N/A

7. N/A

8. N/A

9. There is no record evidence of any work orders for the subject cabin bathroom establishing that the subject cabin sink was unsecured, unlocked, or detached from the bathroom wall. [However, the Plumbing Department reattached it even though no work order was generated.].

---

[2]     Carnival's Accident Summary Report for this earlier incident described the cause as "failure to secure" and noted that "the sink door was locked by plumber/Housekeeping staff . . . [sic] should check the unit regularly."

10. There is no record evidence establishing that Plaintiff's claimed injuries were proximately caused by the alleged incident. [Plaintiff contends that this is a disputed fact, but her position is actually slightly different. Plaintiff recites other facts which she apparently believes is evidence that her fall caused her injuries. But she cannot legitimately challenge Carnival's point that there is no record evidence (i.e., statements in medical records, an affidavit, or deposition testimony) from a physician who specifically opined on causation.

Instead, she focuses on other facts, such as: reporting to the ship's medical center (where X-rays were taken); the shipboard medical staff suspected a fracture was present at the L1 vertebrae and recommended Plaintiff be medically disembarked for further evaluation; x-rays and a CT scan conducted in Miami revealed a compression fracture of the L1 vertebrae; the emergency room physician defined the fracture as having occurred within a few days before the imaging; and the only documented fall before the on-ship fall occurred three years earlier (which Plaintiff says is well outside the range of time when the "acute" fracture could have occurred).].

**Applicable Legal Standards and Analysis**

Summary Judgment

Summary judgment must be entered against a party who fails to show a genuine issue as to a material fact, thus enabling a court to decide the case as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (citations omitted)

(affirming summary judgment for the defendant); *see also generally Quintero v. Geico Marine Ins. Co.*, 983 F.3d 1264 (11th Cir. 2020) (affirming summary judgment for the defendant).

To obtain summary judgment, a defendant may either (1) produce evidence that refutes an essential element of the plaintiff's claim or (2) "point[] out . . . that there is an absence of evidence to support the [plaintiff's] case." *Celotex Corp.*, 477 U.S. at 325, 331. The burden is on the non-moving party to come "forward with sufficient evidence on each element that must be proved." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990) (citation omitted) (affirming summary judgment for the defendant).

Moreover, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to preclude summary judgment for the movant]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Consideration of a summary judgment motion does not lessen the burdens on the non-moving party: the non-moving party still bears the burden of coming forward with sufficient evidence on each element that must be proved. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987). "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the [movant's] substantive evidentiary burden." *Anderson*, 477 U.S. at 254. The trial judge must bear in mind the "actual quantum and quality of proof necessary to support liability" in a given case. *Id.* "[I]f on any part of the prima facie case there would be insufficient evidence to require submission of the case to a

jury, we must affirm the grant of summary judgment [for the defendant]." *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1989).

Where, as here, discovery has been conducted, "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted) (emphasis added); *accord Hudson v. Southern Ductile Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir. 1988).

Mere conclusory allegations without specific supporting facts have no probative value when making a determination on a motion for summary judgment. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

"[T]he nonmoving party must present evidence **beyond the pleadings** showing that a reasonable jury could find in its favor." *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008) (citing *Fickling v. United States*, 507 F.3d 1302, 1304 (11th Cir. 2007)) (emphasis added). "A party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings. Rather, its responses, either by affidavits or otherwise as provided by the rule, must set forth specific facts showing that there is a genuine issue for trial." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990). Such evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 249.

<u>General Maritime Law</u>

The causes of action asserted in this lawsuit arise under the General Maritime law of the United States. Incidents occurring on the navigable waters and bearing a significant

relationship to traditional maritime activities are governed by maritime law. *See Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625 (1959); *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1334 (11th Cir. 1984).

As the court explained in *Smolnikar v. Royal Caribbean Cruises, Ltd.,* "maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2011) (citing *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 864-65 (1986)). In the absence of well-developed maritime law pertaining to the subject negligence claims, the courts incorporate "general common law principles" and state law "to the extent they do not conflict with federal maritime law." *Id.* (citing *Just v. Chambers,* 312 U.S. 383, 388 (1941)).

Ordinarily, a cruise ship is liable for a risk-creating condition only if it has actual or constructive notice of the condition. *Yusko v. NCL (Bahamas) Ltd.,* 4 F.4th 1164, 1167 (11th Cir. 2021). But *Yusko* also held that a passenger need not allege notice when seeking to hold the cruise ship operator vicariously liable for the negligent acts of its employees. *Id.* at 1170.

In the instant case, Judge Moreno held, in ruling on the motion to dismiss, that *Yusko* did not eliminate the requirement of notice in premises liability cases (like the claims alleged in the instant Amended Complaint). Therefore, Worley must establish notice in order to prevail on her claims of negligent maintenance and/or failure to warn.

Tort claims under general maritime law follow general principles of negligence law. *See Lombardi v. NCL (Bahamas) Ltd.,* No. 15-20966-CIV, 2016 WL 1429586, at *2 (S.D. Fla. Apr. 12, 2016) (citing *Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1336 (11th Cir. 2012)).

To support a claim for negligence, a plaintiff must establish that: (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm. *Id*. Under maritime law, "[a] carrier by sea . . . is not liable to passengers as an insurer, but only for its negligence." *Kornberg*, 741 F.2d at 1334.

"[T]he owner of a ship in navigable waters owes passengers a 'duty of reasonable care' under the circumstances." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015). The ordinary reasonable-care-under-the-circumstances standard requires that the shipowner have had actual or constructive notice of the risk-creating condition. *Pizzino v. NCL (Bahamas) Ltd.*, 709 F. App'x 563, 565 (11th Cir. 2017) ("[The plaintiff] was required to demonstrate that Norwegian had actual or constructive notice of the risk-creating condition."); *Keefe*, 867 F.2d at 1322 (11th Cir. 1989) (noting that a defendant's liability "hinges on whether it knew or should have known about the [risk-creating condition]"); *see generally Britt v. Carnival Corp.*, 580 F. Supp. 3d 1211, 1215-16 (S.D. Fla. 2021) (citing *Yusko* for the view that "common sense suggests that there will be . . . occasions where passengers are limited to a theory of direct liability," with premises liability claims being an example).

So Worley must demonstrate a material factual dispute about whether Carnival was on notice (actual or constructive) of the sink's dangerous condition (i.e., not properly locked and/or detached from the wall).

There is no record evidence of *actual* notice.

14

The Eleventh Circuit has identified two alternative ways in which a maritime plaintiff can establish constructive notice sufficient to trigger a duty to warn: (1) "with evidence that the 'defective condition exist[ed] for a sufficient period of time to invite corrective measures,'" and (2) "with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (alteration in original) (quoting *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988); *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661–62 (11th Cir. 1988)).

A plaintiff may establish constructive notice by pointing to previous injuries or showing that the defendant had previously issued a warning about the condition. *Krug v. Celebrity Cruises, Inc.*, 745 F. App'x 863, 867 (11th Cir. 2018) (citing *Sorrels*, 796 F.3d at 1287). As noted, a plaintiff can also establish constructive notice by establishing that the alleged dangerous condition was present for a sufficient interval of time such that the defendant could have taken corrective action. *See Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1323 (S.D. Fla. 2015) (citing *Cohen v. Carnival Corp*. 945 F. Supp. 2d 1351, 1357 (S.D. Fla. 2013)).

As explained in *Lipkin*, "[t]he 'mere implication of actual or constructive notice is insufficient to survive summary judgment'; rather, a plaintiff must show 'specific facts demonstrating, at least, that the purported defect was detectable with sufficient time to allow for corrective action.'" 93 F. Supp. 3d at 1323 (quoting *Cohen*, 945 F. Supp. 2d at 1357).

Although Courts in this District have generally found that a warning sign or warning label may be evidence that a defendant had actual or constructive notice of a dangerous condition,[3] there is no evidence of such warning signs in the instant case.

Additionally, not only must Carnival have known that the condition itself exists, but it also had to have known that the condition is **dangerous**. *See Malley v. Royal Caribbean Cruises Ltd*, 713 F. App'x 905, 908-09 (11th Cir. 2017); *Rojas v. Carnival Corp.,* 93 F. Supp. 3d 1305, 1309 (S.D. Fla. 2015).

In her response, Plaintiff contends that, "at the very least, the sink would have been in its improperly secured position for **several** days prior to the incident, with several crewmembers cleaning and inspecting the sink during that timeframe." [ECF No. 33, pp. 5-6 (emphasis added)].

But that inference is far from clear.

Carnival notes that there is no record evidence of a Carnival policy requiring any employee to inspect the cabin bathroom sink compartment locks daily. It also notes that the cleaning policies do not refer to any housekeeping policies for inspecting the locks which attach the sink compartment to the bathroom wall.

---

[3]   *See*, *e.g.*, *Merideth v. Carnival Corp.,* 49 F. Supp. 3d 1090, 1094–95, (S.D. Fla. 2014) (noting that the presence of warning cones near the area where the plaintiff was injured may be evidence of actual or constructive notice).

Moreover, there is no admissible record evidence that the cabinet compartment and sink were not properly attached to the wall *before* Plaintiff's alleged incident or that Carnival had actual notice that the sink cabinet compartment was not locked before Plaintiff's incident.

Plaintiff unequivocally testified that she always grabbed on to the sink when getting up from the toilet in her stateroom bathroom. Plaintiff has not provided any evidence about whether the sink became detached before her fall, whether it became detached after her first use of the toilet days earlier, or whether it became detached during her last toilet use (which may well have been after the last inspection and cleaning by Carnival's housekeeping staff).

For all practical purposes, Plaintiff is **speculating a**bout this type of constructive notice theory by proffering a general foreseeability theory of liability, which Carnival argues would essentially convert it into an insurer of passenger safety.

The Undersigned agrees that Worley's theory of this type of constructive notice -- i.e., that Carnival surely *must* have somehow known about the allegedly dangerous sink condition for a few days -- is speculative and too removed from the specific facts to generate an adequate factual ground to avoid summary judgment for Carnival on a constructive notice theory.

Assuming, for the sake of discussion, that Plaintiff fell because she grabbed the sink when getting up from the toilet and the sink was unlocked and not attached to the wall, Carnival would not be liable unless it had notice of this dangerous condition. The mere existence of the condition does not mean that Carnival knew about it. *Weiner v. Carnival Cruise Lines,* No. 11-CV-22516, 2012 WL 5199604, at *4 (S.D. Fla. Oct. 22, 2012) (granting Carnival's

17

summary judgment motion and stating that "Weiner cannot avoid summary judgment on some generalized theory of foreseeability that is divorced from the particular events in question").

So the first type of constructive notice method -- demonstrating that the condition existed long enough for Carnival to have learned of it and done something about it -- is unavailable under the undisputed facts.

The Undersigned now turns to a different, alternative theory underlying Plaintiff's constructive notice theory -- i.e., that a June 10, 2019 incident involving one passenger on a sister ship put Carnival on constructive notice of the dangerous condition.

The occurrence of substantially similar incidents may be used to establish constructive notice in a maritime tort case. *See, e.g., Taiariol v. MSC Crociere, S.A.*, 677 F. App'x 599, 601 (11th Cir. 2017). The substantial similarity doctrine does not require identical circumstances, and it allows for some play in the joints depending on the scenario presented and the desired use of the evidence. *Sorrels*, 796 F.3d at 1287. In applying this standard, the relevant question is whether "the two incidents were similar enough to allow the jury to draw a reasonable inference" concerning the cruise ship operator's "ability to foresee" the incident at issue. *Id.* at 1288 (quoting *Borden, Inc. v. Fla. E. Coast Ry. Co.*, 772 F.2d 750, 755 (11th Cir. 1985)).

According to the accident summary report, the passenger in the other incident held the sink to avoid a fall as the ship was *rocking*. Carnival argues that this is not a sufficiently similar incident because Worley grabbed the sink and used it to *pull herself up* from the toilet. It also notes that the incident was on a different ship.

The Undersigned is not persuaded.

Carnival does not even try to argue that the bathroom sink configuration on its sister ship is not substantially similar to the one in Worley's stateroom. It does not point to evidence that the sinks are locked differently or that the sink cabinet is attached to the bathroom differently. Instead, it merely mentions that a different ship was involved and tries to distinguish the mechanics between the two falls. Although a reasonable jury might conclude that there is a meaningful factual difference between a passenger who grabs onto the sink to steady herself when the ship is rocking and a passenger who uses it to brace herself as she gets up from the toilet, another rational jury might conclude that they are similar enough for constructive notice purposes.

To be sure, Plaintiff is relying on only one prior incident, from approximately six months before the incident involved in our lawsuit. But one prior, similar incident can indeed be enough to prevent summary judgment against a personal injury plaintiff urging a constructive notice theory. *Cogburn v. Carnival Corp.*, No. 21-11579, 2022 WL 1215196, at *4-5 (11th Cir. Apr. 25, 2022) (*per curiam*) (reversing summary judgment for the cruise line defendant because one prior incident was substantially similar to the plaintiff's fall). Because *Cogburn* is a relatively recent case (from April 2022) and is a *per curiam* decision and relies on only one prior incident, it is worthwhile to discuss it in some detail here.

In *Cogburn*, the Southern District trial court judge granted summary judgment in favor of Carnival because "[the plaintiff] failed to come forward with evidence establishing that

Carnival had actual or constructive knowledge of the dangerous condition that caused the fall." *Id*. at *1. The Eleventh Circuit reversed.

The plaintiff there slipped on a puddle of liquid on the Promenade Deck of the *Ecstasy* near the roulette tables. *Id.* at *1. "[L]ess than four months before [the plaintiff's] fall, a passenger on the *Ecstasy*, Charlene Vermeulen, was injured when she slipped on liquid on the Promenade Deck's walkway across from the roulette tables." *Id*. *3.

In response to Carnival's summary judgment motion, the plaintiff relied upon "dozens of prior incidents in which passengers had fallen on the same granite flooring." *Id.* Nonetheless, the trial court granted summary judgment to Carnival, finding that "none of these incidents were similar enough to establish constructive notice because, among other things, there was no record evidence demonstrating that the prior incidents occurred in the same location where [the plaintiff] fell." *Id*. (citation and internal quotation marks omitted).

On appeal, the Eleventh Circuit agreed with the plaintiff that she had shown constructive knowledge based on the evidence of **one** prior incident (involving passenger Vermeulen):

> Viewing the evidence in the light most favorable to [the plaintiff], we conclude she established that Carnival had constructive knowledge of the risk-creating condition based on the evidence of Vermeulen's fall. As we explained above, Vermeulen was injured on the *Ecstasy* when she slipped on liquid that had puddled on the granite floor in the walkway on the Promenade Deck near the roulette tables. Because [the plaintiff] and Vermeulen slipped on liquids in the same location, we conclude a reasonable jury could find that based on Vermeulen's fall Carnival could foresee the risk to [the plaintiff].
>
> The district court determined that Carnival lacked constructive notice because, it said, there was no record evidence "demonstrating that the prior incidents

20

occurred in the same location where [the plaintiff] fell." We disagree with the district court's assessment of the record because the evidence, when viewed in the light most favorable to [the plaintiff], reflects that Vermeulen fell in the same spot as [the plaintiff]. Notably, the district court's summary judgment order failed to mention the incident involving Vermeulen.

*Id*. at *4-5 (footnote and internal citations omitted).

The Eleventh Circuit explained that, because it had determined that the one Vermeulen incident was substantially similar, it did not need to address the *other* prior incidents. *Id*. at *5 ("Given this determination, we need not decide whether any of the other prior incidents that [the plaintiff] identified were similar enough to [the plaintiff's] fall to put Carnival on notice of the risk-creating condition or whether the statements of any captain or safety officer established that Carnival had notice.").

Chief United States District Court Judge Cecilia M. Altonaga recently relied upon *Cogburn* to deny a cruise ship operator defendant's summary judgment motion in *Emam v. NCL (Bahamas) Ltd*., No. 20-23271-CIV, 2022 WL 4006521 (S.D. Fla. Aug. 30, 2022). In response to the defendant's summary judgment motion, the plaintiffs cited one other prior incident: "a year prior to [the] [p]laintiffs' accident, another passenger on [the] [d]efendant's vessel, Yvonne Aites, drowned on a KS Watersports excursion." *Id*. The defendant argued that the prior incident was not substantially similar. *Id.* Judge Altonaga sided with the plaintiffs and denied the summary judgment motion. *See also Quashen v. Carnival Corp*., 576 F. Supp. 3d 1275, 1296–97 (S.D. Fla. 2021) ("Carnival was placed on constructive notice by **a** [(singular)] prior incident that occurred under substantially similar conditions.") (emphasis added).

<u>Alleged Product Misuse</u>

Carnival contends that Plaintiff's misuse of the sink entitles it to summary judgment because this (not Carnival's negligence) was the proximate cause of her alleged injuries. It argues that Worley's use of the sink as a support device is "obviously not the sink's intended purpose or a foreseeable use of same." [ECF No. 29, p. 9].

The Undersigned is not convinced, for several reasons.

First, the case law authority Carnival relies upon applies only when a plaintiff is the sole cause of her damages. That is not necessarily the case here, as Plaintiff has demonstrated the existence of a factual dispute about Carnival's negligence under a constructive notice theory.

Second, given this reality, Carnival's argument is akin to a comparative negligence approach, which is for a jury to consider. Moreover, it is not factually clear that Plaintiff's actions caused the sink cabinet to detach from the wall. In fact, based on one interpretation of the evidence, the sink compartment may have been unlocked and not attached to the wall at all when Plaintiff placed her hands on the sink.

Thus, it is the Undersigned's view that the issues of whether Plaintiff "misused" the product (i.e., whether she was negligent) and whether her misuse (assuming it even occurred) was the sole cause of her injuries are quintessential jury issues, inappropriate for summary judgment resolution.

<u>Evidence of Causation</u>

Carnival's final argument is that it is entitled to summary judgment because Plaintiff has not obtained adequate evidence that the fall in her stateroom bathroom caused her alleged injuries. It contends that Plaintiff must have an opinion from a treating doctor or retained expert doctor that, based on a reasonable degree of medical certainty, the fall in her stateroom cabin is the cause of her claimed injuries.

Specifically, Carnival notes that Worley alleges that she sustained a compression fracture of her lumbar spine and suffers from lower back pain as a result of the incident. Because Plaintiff has not retained an independent medical expert and her treating doctors have not expressly opined on causation, Carnival says, Plaintiff is unable to establish medical causation and it is therefore entitled to summary judgment.

In response, Plaintiff contends there is record evidence that her fall proximately caused the compression fracture to her neck. She suggests that a formal medical opinion on causation is not needed because the record evidence could support a finding that the fall was the proximate cause of her injuries.

In cases involving "**complicated** medical questions **far removed** from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." *In re Trasylol Prods. Liab. Litig.*, No. 08-MD-01928, 2011 WL 7109297, at *10 (S.D. Fla. April 27, 2011) (citing *Holley v. ACTS, Inc.*, 357 N.C. 228, 581 S.E.2d 750, 753 (2003)) (emphasis added).

The fact pattern here is not particularly complicated. Worley testified that she fell when the sink she held onto detached from the wall in her stateroom bathroom. She had x-rays and imaging a few days later, and they confirmed a fracture in her neck, at the L1 level. Moreover, Plaintiff may be able to introduce evidence that she suffered injuries "for which expert testimony might not be required." *Katzoff v. NCL (Bahamas) Ltd.*, No. 19-cv-22754, 2021 WL 4973455, *3 (S.D. Fla. Aug. 12, 2021). Therefore, the Undersigned respectfully recommends that Carnival's summary judgment motion concerning causation be denied. Carnival is free to renew the argument at trial, when the trial judge will have a more-nuanced understanding of the medical testimony.

## CONCLUSION

The Undersigned **respectfully recommends** that Judge Moreno **deny** Carnival's summary judgment motion.

## OBJECTIONS

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with Senior United States District Judge Federico A. Moreno. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in

the interest of justice. See 28 U.S.C. § 36(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley*

*v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

      RESPECTFULLY RECOMMENDED, in Chambers, in Miami, Florida, on February 1,

2023.

 

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All Counsel of Record